# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JANE DOE *et al.*,
    *Plaintiffs*,

    v.                                        No. 3:21-cv-748 (JAM)

AVON OLD FARMS SCHOOL, INC. *et al.*,
    *Defendants*.

## OMNIBUS RULING ON PENDING MOTIONS

In this lawsuit, two young women and their mother allege, among other things, a vast conspiracy by a private preparatory school, its employees, local police officers, and the world's largest retail company to cover up an alleged sexual assault. The plaintiffs bring an astounding 52 legal claims under several federal and state laws against ten defendants in a discursive, disorganized, and at times incomprehensible complaint—a complaint larded with more than 1,000 paragraphs spanning nearly 200 pages and in open mockery of the basic requirement of the Federal Rules of Civil Procedure that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

If that were not enough, the claims keep changing. This case is on its *fifth* amended complaint, and the plaintiffs have—unsurprisingly at this point—moved to file a *sixth* amended complaint. For the reasons set forth below, I will dismiss most of the plaintiffs' claims, deny their motion to file a sixth amended complaint, and impose Rule 11 sanctions for a particularly scurrilous allegation that plaintiffs' counsel has advanced against one of the defendants.

## BACKGROUND

Richard Bontatibus and Erica LuBonta Bontatibus ("LuBonta") bring this case on behalf of their minor daughters, Jane Doe 1 and Jane Doe 2.[1] LuBonta also brings claims against several

---

[1] Doc. #145 at 3 (¶¶ 5–6). I refer to the Bontatibus' daughters with the "Jane Doe" pseudonym throughout this

defendants based on her former employment with Avon Old Farms—the preparatory school at the center of this lawsuit—a private day and residential all-boys high school located in Avon, Connecticut.[2]

Although the plaintiffs level most of their allegations against Avon Old Farms, they sue nine other defendants.[3] Two of these defendants work at the school: James Detora and Robert Whitty serve as the current Headmaster and Associate Head of School, respectively.[4] The next two defendants include John Doe, the alleged perpetrator of a sexual assault against Jane Doe, as well as John Doe's mother, who the plaintiffs and parties refer to by her initials, G.G.[5] A third group of defendants includes the Town of Avon and three local police officers who supervised or investigated Jane Doe 1's report of sexual assault: Chief of Police James Rio, Lieutenant Rodney Williams, and Sergeant Jeffrey Gilbert.[6] The final defendant is the retail giant Walmart, Inc., who is named as a defendant arising from the location of the alleged sexual assault at a Walmart store in Avon.[7]

### Procedural posture

The plaintiffs filed their first of many complaints on May 30, 2021.[8] They amended that pleading only a few days later in June and then filed a second amended complaint the following month.[9] After certain defendants moved to dismiss, the plaintiffs filed a third amended complaint

---

opinion—as the parties do in their filings—because the girls are minors and this case includes sexual harassment and assault allegations. *See Sealed Plaintiff v. Sealed Def.*, 537 F.3d 185, 189 (2d Cir. 2008) (citing *Smith v. Edwards*, 175 F.3d 99, 99 n.1 (2d Cir. 1999)).

[2] *See* Doc. #145 at 3 (¶ 7); Avon Old Farms School, About Us, https://www.avonoldfarms.com/about [https://perma.cc/CEG7-4MY4] (last accessed Mar. 30, 2023).

[3] Doc. #145 at 3–4 (¶¶ 8–18).

[4] *Id.* at 4 (¶¶ 9–10, 13).

[5] *Ibid.* (¶¶ 12, 14). The use of pseudonyms for both John Doe and G.G. is appropriate in order protect the identity of the minor John Doe in this case. *See Sealed Plaintiff*, 537 F.3d at 189 (citing *Smith*, 175 F.3d at 99 n.1).

[6] Doc. #145 at 4 (¶¶ 11, 15–16, 18).

[7] *Ibid.* (¶ 17).

[8] Doc. #1.

[9] Docs. #2, #10.

in November 2021.[10] Several months later in February 2022, the plaintiffs requested to file a

fourth, and then a fifth, amended complaint.[11] I reluctantly permitted them to file their fifth

amended complaint and expressed my serious concern that these frequent requests may be

imposing "unnecessary litigation costs and burdens" on the defendants.[12] With that warning

issued, the plaintiffs filed their fifth amended complaint in April 2022.[13]

### Fifth amended complaint

I take the plaintiffs' allegations in their most recent complaint as true for the purpose of

this ruling. In the introduction to the complaint, the plaintiffs accuse Avon Old Farms of

"systemic discriminatory and illegal conduct towards women."[14] At the center of this broad

accusation are the claims of both Jane Does and their mother, all three of whom allege that

students and school officials discriminated against them over the course of their mother's

employment at the school. Avon Old Farms hired LuBonta as a teacher in June 2019, and she

worked there until the school fired her two years later in June 2021.[15]

The plaintiffs present each of their 52 claims in their complaint by separate legal count

(*e.g.*, Count 1: Sexual Assault – Assault and Battery, Jane Doe 1 v. John Doe). But they do not

organize their claims in a coherent fashion. Therefore, in order to understand the basic factual

framework for their claims, I will begin by briefly summarizing the claims as presented by each

plaintiff below.

First, Jane Doe 1 alleges that an Avon Old Farms' student, John Doe, sexually assaulted

her when they encountered one another at a Walmart in Avon.[16] Following that assault, she

---

[10] Docs. #25, #52.
[11] Docs. #100, #107.
[12] Doc. #117.
[13] Doc. #145.
[14] *Id.* at 2.
[15] *Id.* at 7–8 (¶¶ 39–40), 9 (¶ 54).
[16] *Ibid.*

alleges that all ten defendants then engaged in a multi-layered conspiracy to cover up what had occurred.[17] Second, Jane Doe 2 alleges that she experienced multiple instances of sexual harassment from another Avon Old Farms student—not a party to this lawsuit—and that she, along with her family, made several complaints about this student to school officials who failed to adequately address the matter.[18] Finally, LuBonta alleges that her daughters' harassment and the school's ineffectual response precipitated several instances of employment discrimination against her, which ultimately culminated in the school firing her.[19]

### Federal funding

In order to understand the statutory and regulatory background against which many of the plaintiffs' claims arise, I begin with a discussion of the federal funding mechanism that imposed certain statutory obligations on Avon Old Farms that are at the heart of this lawsuit. As a private, wealthy, and independent secondary school, Avon Old Farms does not receive federal funding. But that all changed in the wake of the COVID-19 pandemic. In the spring of 2020, the school accepted federal money from the Small Business Administration's Paycheck Protection Program ("PPP") under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.[20] The receipt of those federal dollars subjected the school to the requirements of a well-known federal civil rights law, Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX").[21]

This law would have new and potentially significant implications for an all-boys, private secondary school. Although the parties dispute exactly when Avon Old Farms became subject to

---

[17] *Ibid.*
[18] *See id.* at 10–30 (¶¶ 67–203).
[19] *Id.* at 2.
[20] *Id.* at 5 (¶ 21).
[21] *Id.* at 6 (¶¶ 25–26).

Title IX, they generally agree that it happened sometime that spring.[22] The plaintiffs further allege both that the school has not paid back the PPP money it received under the CARES Act, and, even if it had, because it used the money to improve "real property" and "purchase fixtures" on its campus, the school remains subject to the federal civil rights law for as long as it uses that property or those fixtures for educational purposes.[23] Notably, the school vehemently disputes these contentions.[24] But I need not settle these fact issues at this stage of the proceedings.

### Tuition assistance

According to the plaintiffs, Avon Old Farms used these federal funds (or at least a portion of them) to provide a specific employee benefit only to the sons, but not the daughters, of school employees.[25] In the past, the school administered a "tuition remission program" for the sons of Avon Old Farms' employees and a "tuition assistance program" for the daughters of school employees.[26] The remission program reduces the amount of tuition that an employee has to pay for his or her son to attend Avon Old Farms, while the assistance program helps employees pay for their daughters to attend a separate private school. Of course, the latter program makes sense for an all-boys institution that can matriculate only the sons of school employees.

For sons, the "staff tuition remission" benefit is based on the employee's years of service and "allows for a percentage of day tuition to be remitted" if the son is admitted and chooses to attend Avon Old Farms.[27] In contrast, the "staff tuition assistance for daughters" benefit was

---

[22] *Ibid.* (¶¶ 21, 26); *see* Doc. #167-3 at 2 (¶ 7). *Compare* Doc. #167-1 at 8 n.3, *with* Doc. #185-1 at 2–4.
[23] *See* Doc. #145 at 5–6 (¶¶ 22–25).
[24] *See* Docs. #167-1 at 8 n.3, #167-3 at 2–3 (¶¶ 4–9) (Ex. B).
[25] *See* Doc. #145 at 6–7 (¶¶ 29–38).
[26] Doc. #167-2 at 52–54 (¶¶ 57–58) (Avon Old Farms School Employee Handbook (Revised September 2019)). I rely on the employee handbooks that Avon Old Farms provided in its motion to dismiss only to provide context to these employee benefits. To the extent that the plaintiffs dispute specific representations in these handbooks or how the school administered these benefits, *see* Docs. #185-1 at 6, #286 at 2–3, I need not resolve those disputes at this stage of the proceedings and take the plaintiffs' allegations as true for present purposes.
[27] Doc. #167-2 at 52–53 (¶¶ 57–58).

available "to full time employees['] daughters who are seeking admissions at an independent school."[28] Avon Old Farms would "provide tuition assistance equal to the difference between the cost of the day student tuition at the school and any financial aid awarded to the student."[29] The school noted in its September 2019 Employee Handbook, however, that both benefits are "subject to change at any time and [are] subject to availability based on the budget authorized by the [Avon Old Farms] Board of Directors."[30]

And change it did. In the wake of COVID-19, the school placed "on hold" the tuition assistance benefit for daughters for the 2020–2021 academic year due to "the negative financial implications" of the pandemic.[31] Avon Old Farms explained that "[w]hen appropriate the school will determine if this program can be continued and will communicate to the community accordingly."[32] The school did not reduce or eliminate the tuition remission benefit for the sons of Avon Old Farms' employees.[33]

Because LuBonta was a school employee, her daughters were eligible for this tuition assistance benefit if either attended certain private schools.[34] Jane Doe 2, LuBonta's eldest daughter, attended the Ethel Walker School in Simsbury, Connecticut—an all-girls private day and boarding school.[35] After Avon Old Farms changed its tuition assistance benefit for the 2020–2021 academic year, LuBonta had to cover the difference in Jane Doe 2's tuition.[36]

---

[28] *Id.* at 53 (¶ 58). An "independent school" colloquially refers to privately funded, non-state schools.
[29] *Ibid.*
[30] *Ibid.* (¶¶ 57–58).
[31] Doc. #167-4 at 54–55 (¶¶ 56–57) (Avon Old Farms School Employee Handbook (Revised August 2020)).
[32] *Id.* at 55 (¶ 57).
[33] *Id.* at 54 (¶ 56).
[34] Doc. #145 at 7 (¶¶ 33–34).
[35] *Id.* at 8 (¶ 41).
[36] *Ibid.* (¶¶ 42–44).

The school's benefit change also—according to the plaintiffs—prevented LuBonta's youngest daughter, Jane Doe 1, from "considering attending an all-girls private high school."[37] Finally, the plaintiffs complain that Avon Old Farms did not allow either Jane Doe 1 or 2 to enroll as students there after the benefit changed.[38]

### *Sexual harassment of Jane Doe 2*

LuBonta and Jane Doe 2 allege that they experienced several instances of sexual harassment by Avon Old Farms' students during LuBonta's tenure at the school.[39] These incidents included sexually provocative jokes, vulgar text messages and social media posts, as well as threats of sexual violence.[40] LuBonta, as a teacher and the mother of the harassed student, reported these incidents to school officials—to Whitty and Detora in particular—but she claims that they failed to address them appropriately.[41]

Much of the harassment that Jane Doe 2 and LuBonta experienced came from a minor Avon Old Farms student (not named as a defendant) who had been in a romantic relationship with Jane Doe 2.[42] After the two teenagers broke up, the plaintiffs allege that he engaged in particularly vile and harassing behavior.[43] LuBonta reported him specifically to Whitty and Detora, but she alleges that they failed to hold this student accountable.[44] At one point in the fall of 2020, LuBonta addressed this ongoing situation with her first-year students, prompting school officials, including Whitty, to confront her because they claimed it had made several of the students uncomfortable.[45]

---

[37] *Ibid.* (¶¶ 45–46).
[38] *Id.* at 9 (¶¶ 48–52).
[39] *Id.* at 10–30 (¶¶ 63–203).
[40] *Id.* at 10–11 (¶¶ 63–73), 12 (¶ 78), 13–14 (¶¶ 89–90), 18 (¶ 122).
[41] *Id.* at 11–14 (¶¶ 74–84, 88, 91, 93–95).
[42] *Id.* at 13–16 (¶¶ 85–102).
[43] *Ibid.*
[44] *Id.* at 16–21 (¶¶ 103–43).
[45] *Id.* at 22–24 (¶¶ 144–61).

After encouragement from Avon Old Farms, LuBonta and Jane Doe 2 eventually reported the ex-boyfriend to the Simsbury Police Department, resulting in a formal "no contact" order against him barring him from contacting Jane Doe 2.[46] The school then ordered LuBonta not to discuss this ongoing situation with her students.[47] LuBonta objected and, after learning of the specifics of the student's punishment, expressed frustration with what she thought was a "slap[] on the wrist."[48] She complained that the school's milquetoast discipline only emboldened him and that he continued to harass both her and her daughter.[49] The combination of this student's harassment and the school officials' anemic response made LuBonta and her family feel unsafe on campus and afraid to use the school's resources and facilities made available to employees and their offspring.[50]

### *Sexual assault of Jane Doe 1*

The plaintiffs' sexual harassment allegations culminate with the accusation of Jane Doe 1 (LuBonta's younger daughter) that an Avon Old Farms student, John Doe, sexually assaulted her on February 20, 2021, at a Walmart store in Avon, Connecticut.[51] That day, Jane Doe 1, her older sister Jane Doe 2, and their friend visited Walmart to purchase craft supplies for a weekend project.[52] They arrived at the store around the same time as several students from Avon Old Farms, including John Doe, who "were on a school sponsored trip."[53] After the teenagers briefly interacted, Jane Doe 1 alleges that John Doe stalked and subsequently sexually assaulted her by means of unwanted kissing and touching in an aisle at the store.[54]

---

[46] *See id.* at 24–26 (¶¶ 162–71).
[47] *Id.* at 26 (¶¶ 172–75).
[48] *Id.* at 26–27 (¶¶ 176–82).
[49] *Id.* at 27–28 (¶¶ 183–89), 30 (¶¶ 200–03).
[50] *Id.* at 28–29 (¶¶ 190–99).
[51] *Id.* at 30–43 (¶¶ 204–319).
[52] *Id.* at 30 (¶ 204).
[53] *Id.* at 30–31 (¶¶ 205–09).
[54] *Id.* at 31–33 (¶¶ 210–38).

Following the assault, Jane Doe 1 found her sister and friend, and asked to leave the store immediately.[55] After leaving, she told her parents about the assault, and they quickly contacted Avon Old Farms to report what had occurred.[56] Whitty took Jane Doe's statement about the assault over the phone.[57] And the school then launched an internal investigation.[58]

Jane Doe 1 also reported the alleged sexual assault to the Avon Police Department.[59] The department investigated the case before eventually closing it due to insufficient evidence.[60] After the department closed its case, Avon Old Farms permitted John Doe to return to campus and the dormitory while the school's formal disciplinary hearing remained pending.[61] In April 2021, a disciplinary board convened, and the board members absolved John Doe of any wrongdoing by a unanimous vote.[62] The plaintiffs characterize this hearing as a "kangaroo court" with significant procedural deficiencies that accrued to the benefit of John Doe and at Jane Doe 1's expense in violation of Title IX procedures.[63]

The plaintiffs allege that Avon Old Farms' administrators, Walmart employees, John Doe, and G.G. conspired with Avon's police officers to cover up the alleged sexual assault.[64] As a part of this conspiracy, the defendants purportedly edited Walmart's surveillance footage in order to delete the portion of the footage that showed John Doe sexually assaulting Jane Doe 1 in one of the store's aisles.[65] The plaintiffs also claim that several defendants fabricated statements

---

[55] *Id.* at 34 (¶¶ 239–45).
[56] *Id.* at 34–35 (¶¶ 246–57).
[57] *Id.* at 37 (¶¶ 269–71).
[58] *See id.* at 37–39 (¶¶ 272–91).
[59] *Id.* at 39 (¶¶ 292–93).
[60] *See id.* at 40–43 (¶¶ 295–318).
[61] *See id.* at 43–52 (¶¶ 322–91).
[62] *Id.* at 52–54 (¶¶ 392–414).
[63] *Id.* at 54–56 (¶¶ 414–24).
[64] *Id.* at 43 (¶ 319).
[65] *Id.* at 57–62 (¶¶ 427–65).

and evidence throughout the course of the school's and police department's investigations, which the plaintiffs attack as woefully deficient.[66]

All three plaintiffs claim that Avon Old Farms' inept response to their claimed abuse inflicted physical and emotional distress and, again, prevented them from accessing the school's educational resources and programs.[67]

### Employment discrimination

Throughout the complaint, LuBonta alleges that Avon Old Farms discriminated against her while she worked there from 2019 to 2021.[68] She claims that the school labeled her a "drama queen," denied her educational opportunities, excluded her from school activities, and then, after realizing she was pursuing legal recourse based on the harassment she experienced, fired her in retaliation.[69] And she also alleges that the school paid her less than her similarly situated male colleagues and even denied her on-campus housing because she was a woman.[70]

### Legal claims

The plaintiffs combine all these allegations into 52 separate legal counts, which they separate out by plaintiff and defendant.[71] They bring their federal claims under several well-known civil rights statutes. They sue under 42 U.S.C. §§ 1983, 1985, and 1986 for the alleged conspiracy to cover up Jane Doe 1's sex assault, under Title IX for sex discrimination, and LuBonta asserts her employment discrimination claims under Title VII and the federal Equal Pay Act ("EPA").[72] They also bring state law claims for assault and battery, intentional infliction of

---

[66] *See id.* at 63–70 (¶¶ 466–514).
[67] *Id.* at 78–196 (¶¶ 564–1080).
[68] *Id.* at 70–81 (¶¶ 515–89).
[69] *See id.* at 70–76 (¶¶ 515–54).
[70] *Id.* at 76–77 (¶¶ 555–63).
[71] *Id.* at 81–196 (¶¶ 590–1080).
[72] *Id.* at 84–85 (¶¶ 622–33), 88–135 (¶¶ 655–966), 137–68 (¶¶ 978–1167), 183–96. Counts 49 to 52 of the fifth amended complaint contain numerous errors in the numbering of the paragraphs, jumping from ¶ 1361 to ¶ 1024 between pages 186 and 187, ¶ 1055 to ¶ 1362 between pages 190 and 191, and ¶ 1369 to ¶ 1056 between pages 192

emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), violations of the Connecticut Fair Employment Practices Act ("CFEPA"), and negligent supervision.[73]

### *Pending motions*

The parties have filed several motions in this case. First, Avon Old Farms and Detora move to dismiss certain legal counts of the plaintiffs' fifth amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[74] Whitty and John Doe do the same.[75] Both G.G. and Walmart move to dismiss the claims against them pursuant to Rule 12(b)(6).[76] Second, the parties have filed separate motions to strike certain portions of each other's pleadings.[77] Third, the plaintiffs have moved to file a sixth amended complaint.[78] And, finally, Whitty moves for Rule 11 sanctions against plaintiff's counsel for an allegation that he included about Whitty when opposing Whitty's motion to dismiss.[79]

### DISCUSSION

The standard that governs a motion to dismiss under Rules 12(b)(1) and 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain the Court's subject-matter jurisdiction as well as the plaintiff's grounds for relief. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[80] As the Supreme Court has explained, this "plausibility" requirement is

---

and 193. *See id.* at 186–87, 190–93.

[73] *Id.* at 81–84 (¶¶ 590–621), 86–88 (¶¶ 634–54), 136–37 (¶¶ 967–77), 168–82 (¶¶ 1168–1328).

[74] Doc. #167 at 1–3 (Counts 6, 14, 22, 24, 26, 27, 28, 32, 33, 34, 35, 36, 37, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 50).

[75] Docs. #184 at 1–2 (Counts 5, 13, 23, 24), #238 at 1 (Counts 1, 2, 3, 4, 12). Detora asserted additional arguments for dismissal in Whitty's motion to dismiss. *See* Doc. #184-1 at 15–17.

[76] Docs. #206 at 1 (Counts 9, 17), #255 at 1 (Counts 7, 15).

[77] Docs. #156, #183, #198, #199, #200.

[78] Doc. #244.

[79] Doc. #262.

[80] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

"not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid.* In other words, a valid claim for relief must cross "the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). In addition, a complaint cannot rely on conclusory allegations. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). A complaint that makes a threadbare recital of the elements of a cause of action without including supporting factual allegations does not establish plausible grounds for relief. *Ibid.*

### Civil rights claims - 42 U.S.C. §§ 1983, 1985, 1986

The plaintiffs bring civil rights claims under the Civil Rights Act of 1871, also known as the Ku Klux Klan Act, against all ten defendants based on the purported conspiracy to cover up the alleged sexual assault between Jane Doe 1 and John Doe.[81]

*Section 1985*. Jane Doe 1 and LuBonta assert claims under § 1985 against John Doe, Whitty, Avon Old Farms, G.G., the Town of Avon, Walmart, and Sergeant Gilbert.[82] These defendants, except for the Town of Avon and Sergeant Gilbert who answered the plaintiffs' allegations, move to dismiss these claims pursuant to Rule 12(b)(6).[83]

Section 1985 creates in part a civil remedy against private persons who conspire to deprive others of the equal protection of law. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1865–66 (2017).[84] "A conspiracy claim under Section 1985(3) requires a plaintiff to allege: 1) a

---

[81] *See* Doc. #145 at 57–70 (¶¶ 427–514).

[82] *Id.* at 84–85 (¶¶ 622–33) (Count 2, Jane Doe 1 v. John Doe), 88–91 (¶¶ 655–76) (Count 5, Jane Doe 1 v. Whitty), 91–95 (¶¶ 677–98) (Count 6, Jane Doe 1 v. Avon Old Farms), 95–97 (¶¶ 699–714) (Count 7, Jane Doe 1 v. G.G.), 97–100 (¶¶ 715–35) (Count 8, Jane Doe 1 v. Town of Avon), 100–04 (¶¶ 736–56) (Count 9, Jane Doe 1 v. Walmart), 108–10 (¶¶ 789–800) (Count 12, LuBonta v. John Doe), 110–14 (¶¶ 801–22) (Count 13, LuBonta v. Whitty), 114–17 (¶¶ 823–44) (Count 14, LuBonta v. Avon Old Farms), 117–20 (¶¶ 845–60) (Count 15, LuBonta v. G.G.), 120–23 (¶¶ 861–81) (Count 16, LuBonta v. Town of Avon), 123–26 (¶¶ 882–902) (Count 17, LuBonta v. Walmart), 192–95 (¶¶ 1056–75) (Count 51, Jane Doe 1 v. Sergeant Gilbert), 195–96 (¶¶ 1077–80) (Count 52, LuBonta v. Sergeant Gilbert).

[83] Docs. #166 at 2 (the Town of Avon), #167-1 at 31–37 (Avon Old Farms), #184-1 at 6–15 (Whitty), #192 at 2 (Sergeant Gilbert), #206-1 at 7–12 (Walmart), #238-1 at 6–11 (John Doe), #255-1 at 6–13 (G.G.).

[84] *See* Doc. #145 at 117. Count 15 is the only place the plaintiffs cite § 1985(3). *Ibid.* Section 1985(3) provides, in

conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of

persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person

or property or deprived of any right or privilege of a citizen of the United States." *Dolan v.*

*Connolly*, 794 F.3d 290, 296 (2d Cir. 2015).

Viewing the facts in the light most favorable to the plaintiffs, they fail to meet the first

element of a § 1985(3) claim—that is, they do not allege a plausible conspiracy between any of

the defendants. "[A] plaintiff alleging a conspiracy under § 1985(3) must allege, with at least

some degree of particularity, overt acts which defendants engaged in which were reasonably

related to the promotion of the claimed conspiracy." *Thomas v. Roach*, 165 F.3d 137, 147 (2d

Cir. 1999). Although the "conspiracy need not be shown by proof of an explicit agreement," a

plaintiff must show "that the parties have a tacit understanding to carry out the prohibited

conduct." *Id.* at 146.

In the plaintiffs' 89 allegations germane to the purported conspiracy, they rely on nothing

more than conjecture that the defendants agreed to submit false documents and manipulate

physical evidence to hide a sexual assault between two teenagers.[85] To be sure, throughout these

allegations the plaintiffs cite certain times, dates, and interactions between the defendants as

veritable "smoking guns" and "just-one-more-thing" Columbo-like gotchas.[86] But the facts the

plaintiffs rely on do absolutely nothing to suggest that the defendants had some tacit

---

pertinent part: "If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... [and] do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation[.]" 42 U.S.C. § 1985(3).

[85] *See* Doc. #145 at 43 (¶ 319), 57–70 (¶¶ 427–514).

[86] *See, e.g.*, *id.* at 59–61 (¶¶ 436, 440–41, 443, 445, 454), 65 (¶ 479).

understanding to cover up a sexual assault. *See Turner v. Boyle*, 116 F. Supp. 3d 58, 96 (D. Conn. 2015) (rejecting conspiracy allegations for a § 1985(3) claim, which alleged, in part, "that shadowy and secretive relationships and power dichotomies" caused the plaintiff harm).

This is not *Hamlet* without the prince. This is *Hamlet* without the prince, Claudius, Gertrude, Ophelia, Horatio, or any other character from the Shakespearean tragedy. Ignoring the many legal conclusions peppered throughout this section of the complaint, what the facts the plaintiffs do plead suggest are reasonable and common investigation-related actions by each defendant in the face of a serious sexual assault allegation. *See Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (affirming dismissal of § 1985(3) claims because, among other things, the plaintiff failed to allege "that members of the alleged conspiracy entered into an agreement to achieve unlawful ends").

The defendants' motions to dismiss drive this point home by highlighting that the plaintiffs' allegations fail to detail any facts that show a plausible conspiratorial agreement between the defendants and emphasizing that the plaintiffs do not allege any non-conclusory overt acts that each defendant performed in furtherance of this purported conspiracy.[87] In essence, the plaintiffs try to infer a conspiracy from nothing more than the fact that there was an investigation, that it involved communications between various parties, and that the investigation did not come out in the plaintiffs' favor. And by failing to plausibly allege a conspiracy, Jane Doe 1's and LuBonta's § 1985(3) claims necessarily fail.

Yet, even if I were to find that the plaintiffs had alleged a plausible agreement between the defendants to carry out prohibited conduct, these claims would still be insufficient. The Supreme Court has construed and limited § 1985(3) to require a plaintiff to prove a conspiracy

---

[87] *See* Docs. #167-1 at 31, #184-1 at 6–8, #206-1 at 7–9, #238-1 at 9–10, #255-1 at 8–9.

that has the following characteristics: "(1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993); *see also Sarner v. Caldwell-Boyd*, 2022 WL 4132940, at *5 (D. Conn. 2022) (discussing these requirements). The plaintiffs do not allege a conspiracy that contains either of these characteristics.

As to the first of these requirements, the plaintiffs do not clearly specify the basis of the animus, other than to, quite confusingly, say in each legal count for these claims that the defendants acted based on Jane Doe 1's and LuBonta's "sex, [] due process rights, [] rights as a minor (age), and [] rights under Title IX."[88] But "due process rights" and "rights under Title IX" "plainly do not possess the type of inherited or immutable characteristics sufficient to satisfy the class-based animus requirement." *Dolan*, 794 F.3d at 296 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971)).

If either age or gender suffice, *see ibid.* ("Section 1985(3) covers classes beyond race"), the plaintiffs have failed to plausibly allege that the defendants, as purported conspirators, were motivated by either. *See Doe*, 837 F. App'x at 68 (noting that the plaintiff only pled conclusory allegations in support of his § 1985(3) claims and failed to allege that the supposed conspirators "were motivated by some class-based animus"). In fact, none of the allegations plausibly suggest that the defendants acted *because of* Jane Doe 1's or LuBonta's sex or age.[89]

---

[88] *See, e.g.*, Doc. #145 at 85 (¶¶ 630–31), 91 (¶¶ 673–74), 94 (¶¶ 695–96), 97 (¶¶ 711–12), 100 (¶¶ 732–33), 103 (¶¶ 753–54), 110 (¶¶ 797–98), 113 (¶¶ 819–20), 117 (¶¶ 841–42), 119 (¶¶ 857–58), 122–23 (¶¶ 878–79), 126 (¶¶ 899–900), 195 (¶¶ 1073–74), 196 (¶ 1077).
[89] *See id.* at 43 (¶ 319), 57–70 (¶¶ 427–514).

Take age for example. It makes no sense that the defendants acted with an animus toward minors, because John Doe is himself a minor, so why would the defendants protect him by covering up a sexual assault if they were motivated to do so because Jane Doe 1 was a minor?[90] Put another way, in order to credit this claim, one would have to believe that the object of the defendants' conspiracy was to protect someone who is a member of a particular class, but the key characteristic of that class is actually what served as the impetus for the defendants' discrimination in the first instance. And how can LuBonta, an adult, credibly claim that the defendants conspired against her because she was a minor?[91] These allegations are nonsense.

Throughout all this, the plaintiffs assert in the most conclusory terms that their conspiracy was based on age or sex.[92] Most tellingly, in the plaintiffs' opposition to Avon Old Farms and Detora's motion to dismiss these claims, they argue that the discrimination was due to "sex" and "age," and cite in support the paragraphs of the fifth amended complaint that simply state this "fact"—a bootstraps approach that fails because "naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief." *Ibid.* (quoting *Iqbal*, 556 U.S. at 678).[93]

As to the second requirement, the Supreme Court has recognized only two federal constitutional rights for purposes of a § 1985(3) claim that are protected against private as well as government encroachment: "the Thirteenth Amendment right to be free from involuntary servitude ... and, in the same Thirteenth Amendment context, the right of interstate travel." *Bray*, 506 U.S. at 278. Here, Jane Doe 1 and LuBonta do not allege *any* facts to suggest that the

---

[90] *See* Doc. #167-1 at 35 (Avon Old Farms making this very point).
[91] *See id.* at 37.
[92] *See supra* note 88.
[93] *See* Doc. #201-5 at 6.

objective of the defendants' so-called conspiracy was to cast them into involuntary servitude or to obstruct their interstate travel.

Even if § 1985(3) is not so limited, Jane Doe 1's and LuBonta's claims do not pass muster. They suggest that the objective of the defendants' conspiracy was to violate their Fourteenth Amendment rights and "rights under Title IX."[94] But these are "legal conclusions masquerading as factual conclusions" that are insufficient "to defeat a motion to dismiss." *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006).[95]

And these claims under the Fourteenth Amendment fail for the additional reason that the plaintiffs do not plead state action. "The Fourteenth Amendment … do[es] not apply to private parties unless those parties are engaged in activity deemed to be state action." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009). And a § 1985(3) claim predicated on such a violation requires state action. *See United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 832 (1983); *Edmond v. Hartford Ins. Co.*, 27 F. App'x 51, 53 (2d Cir. 2001) (same).

Here, the plaintiffs argue that John Doe, Whitty, Avon Old Farms, G.G., and Walmart are state actors because they conspired with Avon police officers.[96] In their briefs, however, the plaintiffs neither cite nor apply any of the legal tests that courts use to determine whether actions by private parties can be fairly attributed to the state. *See Barrows v. Becerra*, 24 F.4th 116, 135 (2d Cir. 2022) (discussing the three tests that courts use). Even if they did, as explained above, the plaintiffs have failed to plausibly suggest that the private party defendants "acted in concert

---

[94] *See ibid.*
[95] With respect to the plaintiffs' claim that the defendants sought to interfere with their "rights under Title IX," this raises the interesting issue of whether a § 1985(3) conspiracy may have as its objective a violation of a right created by a federal statute—in this case, Title IX—rather than the federal constitution. *See Sarner*, 2022 WL 4132940, at *6 n.42. Because the plaintiffs' § 1985 claims fail for other reasons, I need not reach this issue.
[96] *See* Doc. #264-1 at 4 (¶ 3).

with" the Avon police officers. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)

(explaining, in the context of "a section 1983 conspiracy theory," that a "complaint must allege

facts demonstrating that the private entity acted in concert with the state actor to commit an

unconstitutional act" in order for the private entity's action to be attributed to the state).

In sum, I conclude that the plaintiffs have not plausibly alleged that the defendants

conspired with one another, acted with a class-based animus, or agreed to encroach on either of

the two federal constitutional rights recognized in *Bray* that apply to § 1985(3) claims. The

plaintiffs' opposition briefs offer nothing to rebut the defendants' arguments.[97] Accordingly, I

will dismiss the plaintiffs' § 1985 claims against John Doe, Whitty, Avon Old Farms, G.G., and

Walmart (*i.e.*, Counts 2, 5, 6, 7, 9, 12, 13, 14, 15, and 17) with prejudice.

The Town of Avon and Sergeant Gilbert did not move to dismiss the plaintiffs' § 1985

claims against them.[98] They answered plaintiffs' complaint instead, both asserting that the

plaintiffs had failed to state a claim upon which relief can be granted as an affirmative defense.[99]

But the plaintiffs' claims against these defendants are factually indistinguishable from their

claims against the defendants who have moved to dismiss.[100] So, I will *sua sponte* dismiss them

pursuant to 28 U.S.C. § 1915(e)(2)(B).

I am aware that I should not dismiss claims "without first providing the adversely

affected party with notice and an opportunity to be heard." *See Int'l Code Council, Inc. v.*

---

[97] *See* Docs. #185-1 at 9, #201-5 at 4–7, #233-1 at 4–7, #241-1 at 4–7, #264-1 at 2–6. These briefs fail to address most of the arguments that the defendants set forth in their motions to dismiss. Rather, Attorney Mahoney has decided that the best use of his clients' briefs is to complain about how discovery has progressed in this case. That is not the appropriate way in which to raise discovery issues with the Court. And, even more concerning, he cites almost no law in support of his arguments.
[98] Doc. #145 at 97–100 (¶¶ 715–35) (Count 8, Jane Doe 1 v. Town of Avon), 120–23 (¶¶ 861–81) (Count 16, LuBonta v. Town of Avon), 192–95 (¶¶ 1056–76) (Count 51, Jane Doe 1 v. Sergeant Gilbert), 196 (¶¶ 1077–80) (Count 52, LuBonta v. Sergeant Gilbert).
[99] Docs. #166 at 2, #192 at 2.
[100] *Compare* Doc. #145 at 97 (¶¶ 715–19), *with id.* at 101 (¶¶ 736–40).

*UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022). In this case though, the plaintiffs have had several opportunities to brief and address the deficiencies in their legal claims under § 1985.[101] I am confident that this is one of the few instances where *sua sponte* dismissal is appropriate because these claims are plainly deficient, and it is "unmistakably clear" that they "lack[] merit" and are "otherwise defective." *See Nwoye v. Obama*, 2023 WL 382950, at *1 (2d Cir. 2023) (explaining the narrow exceptions for a district court to dismiss claims *sua sponte*); *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82–83 (2d Cir. 2018) (noting that "in certain circumstances a *sua sponte* dismissal may be appropriate"). Accordingly, I will *sua sponte* dismiss the plaintiffs' § 1985 claims against the Town of Avon and Sergeant Gilbert (*i.e.*, Counts 8, 16, 51, and 52) with prejudice because it is apparent that the plaintiffs have no possibly plausible grounds to pursue relief under § 1985.

*Section 1986*. Jane Doe 1 and LuBonta bring § 1986 claims against Chief Rio and Lieutenant Williams.[102] Neither Chief Rio nor Lieutenant Williams moved to dismiss these claims; like the Town of Avon and Sergeant Gilbert, they filed answers.[103] But the plaintiffs' claims under § 1986 necessarily fail because a violation of § 1986 may proceed only if a plaintiff is able to establish a predicate claim under § 1985. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000); *Kinnel v. Brown*, 2023 WL 1069493, at *7 (D. Conn. 2023) (same). As discussed, the plaintiffs cannot establish a predicate claim under § 1985. Therefore, any claims against Chief Rio and Lieutenant Williams also fail. Accordingly, because these claims lack any merit whatsoever, I will *sua sponte* dismiss them against Chief Rio and Lieutenant Williams (*i.e.*, Counts 10, 11, 18, and 19) with prejudice.

---

[101] *See* Docs. #185-1 at 9, #201-5 at 4–7, #233-1 at 4–7, #241-1 at 4–7, #264-1 at 2–6.
[102] Doc. #145 at 104–08 (¶¶ 757–88) (Counts 10–11), 126–31 (¶¶ 903–34) (Counts 18–19).
[103] *See* Docs. #190 at 2 (Chief Rio's Answer and Affirmative Defenses), #191 at 2 (Lieutenant Williams' Answer and Affirmative Defenses).

*Section 1983*. Jane Doe 1 brings a single claim under § 1983 against the Town of Avon.[104] She alleges that the Avon Police Department was untrained and "deliberately indifferent" to those it was sworn to protect.[105] She also claims that the Avon Police Department mishandled her sexual assault complaint because she was a woman, conspired with Avon Old Farms to cover up the sexual assault, and failed to train its officers on how to properly investigate a sexual assault.[106]

A municipality, such as Avon, is subject to suit under § 1983. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But it may be liable only if the alleged police misconduct was caused by a municipal policy, practice, or custom, or if it was caused by a municipality's deliberate indifference and inaction in light of a history of prior similar constitutional deprivations by municipal officers. *See Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (describing the scope and limitations of municipal liability under *Monell*).

Importantly, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Here, Jane Doe 1's allegations against Chief Rio, Lieutenant Williams, and Sergeant Gilbert have to do with the purported conspiracy to cover up her alleged sexual assault.[107] But, as explained earlier, those claims are conclusory and fail to suggest unlawful behavior. And even if one could read certain allegations dropped into the conspiracy claims as independent

---

[104] Doc. #145 at 183–86 (¶¶ 1329–61) (Count 49).
[105] *See id.* at 183 (¶¶ 1336–37).
[106] *See id.* at 184–86 (¶¶ 1338–61).
[107] *See id.* at 104–06 (¶¶ 757–72) (Count 10), 106–08 (¶¶ 773–88) (Count 11), 126–28 (¶¶ 903–18) (Count 18), 129–31 (¶¶ 919–34) (Count 19), 192–95 (¶¶ 1056–76) (Count 51), 195–96 (¶¶ 1077–80) (Count 52).

constitutional violations in-and-of-themselves, Jane Doe 1 does not then logically connect them to a town policy, practice, or custom. *See Thomas*, 165 F.3d at 147 (concluding that "[the plaintiff's] inability to demonstrate that under § 1983 a genuine issue of material fact exists with regard to [the municipality's] policy or custom linked to the alleged constitutional deprivations precludes any § 1985(3) conspiracy claim against it based on the same allegations").

Additionally, in order to prevail on a custom-or-policy claim, "a plaintiff must identify either an 'express rule or regulation,' a practice that 'was so persistent or widespread as to [carry] the force of law,' or misconduct of 'subordinate employees' that 'was so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Swinton v. Livingston Cnty.*, 2023 WL 2317838, at *1 (2d Cir. 2023) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015)). She does not do that. Jane Doe 1's fleeting reference to a "well-settled practice" and her conclusory suggestion that she was "singled out" because she was a woman is insufficient.[108] At bottom, she can point to no municipal policy, practice, or custom that caused her purported injury, and these allegations fall far short of pleading a plausible *Monell* claim. *See Gomez v. City of Norwalk*, 2017 WL 3033322, at *3 (D. Conn. 2017) (noting that "a *Monell* claim cannot survive a motion to dismiss if it relies on conclusory allegations that a municipal policy, custom or practice exists").

Finally, Jane Doe 1 claims that Avon failed to train its police officers on the proper way to investigate sexual assault cases, which amounted to deliberate indifference.[109] But deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their

---

[108] *See id.* at 183 (¶¶ 1333–37), 185 (¶ 1349).
[109] *Id.* at 186 (¶¶ 1357–61).

training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Ibid.*

Jane Doe 1 does not allege any facts that plausibly suggest a deficient training program, which then caused either Chief Rio, Lieutenant Williams, or Sergeant Gilbert to violate her constitutional rights. Accordingly, because the complaint is so obviously deficient, I will *sua sponte* dismiss the *Monell* claim (*i.e.*, Count 49) but without prejudice as to the Town of Avon in the event that there are additional facts to support a *Monell* claim.[110]

In sum, for the reasons set forth above, I will dismiss all the plaintiffs' federal claims under 42 U.S.C. §§ 1983, 1985, and 1986. The dismissal of those claims terminates Walmart, G.G., the Town of Avon, Chief Rio, Lieutenant Williams, and Sergeant Gilbert as parties in this lawsuit. I now turn to consider the plaintiffs' Title IX claims.

### Title IX claims against Avon Old Farms and Detora

All three plaintiffs sue Avon Old Farms claiming sex discrimination under Title IX, while Jane Doe I brings a single claim under that statute against Detora.[111] Avon Old Farms moves to dismiss some but not all of these claims, and Detora moves to dismiss the single claim against him.[112]

Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education

---

[110] *See* Doc. #166 (the Town of Avon's Answer and Affirmative Defenses).

[111] Doc. #145 at 131–35 (¶¶ 935–62) (Count 20, LuBonta v. Avon Old Farms), 137–39 (¶¶ 978–87) (Count 25, LuBonta v. Avon Old Farms), 140–45 (¶¶ 992–1006) (Count 27, LuBonta v. Avon Old Farms), 146–51 (¶¶ 1011–37) (Count 29, LuBonta v. Avon Old Farms), 152–53 (¶¶ 1042–52) (Count 31, LuBonta v. Avon Old Farms), 153–56 (¶¶ 1053–73) (Count 32, Jane Doe 1 v. Avon Old Farms), 156 (¶¶ 1074–80) (Count 33, Jane Doe 1 v. Avon Old Farms), 157–59 (¶¶ 1081–95) (Count 34, Jane Doe 1 v. Avon Old Farms), 159–61 (¶¶ 1096–111) (Count 35, Jane Doe 2 v. Avon Old Farms), 161–63 (¶¶ 1112–28) (Count 36, Jane Doe 1 v. Avon Old Farms), 163–68 (¶¶ 1129–67) (Count 37, Jane Doe 1 v. James Detora).

[112] Doc. #167 at 2–3 (moving to dismiss Counts 27, 32–37), 10–17 (arguing that several of the plaintiffs' Title IX claims should be dismissed for lack of subject matter jurisdiction or failure to state a claim). Avon Old Farms did not move to dismiss several of the plaintiffs' Title IX claims, including Counts 20, 25, 29, and 31, and only a portion of Count 27. *See id.* at 2.

program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The statute "broadly prohibits education programs that receive federal funding from discriminating 'on the basis of sex.'" *Soule by Stanescu v. Conn. Ass'n of Sch., Inc.*, 57 F.4th 43, 54 (2d Cir. 2022). "The Supreme Court has recognized an implied private right of action under Title IX … and has held that monetary relief is available in such suits." *Ibid.*

Jane Doe 1 cannot sue Detora under Title IX because, as he correctly points out in his motion to dismiss, "Title IX reaches institutions and programs that receive federal funds," and the statute "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *Sutton v. Stony Brook Univ.*, 2022 WL 4479509, at *2 (2d Cir. 2022) (same).[113] As Headmaster at Avon Old Farms, Detora is a school official not subject to suit under Title IX based on clear Supreme Court and Second Circuit precedent.

Yet, Jane Doe 1 claims otherwise.[114] She cherry picks a quote from a district court opinion issued over 20 years ago (well before *Fitzgerald*) to argue that Detora is subject to suit under Title IX.[115] He clearly is not. Accordingly, I will dismiss the Title IX claim against Detora (*i.e.*, Count 37) with prejudice.

In contrast, Avon Old Farms is subject to suit under Title IX as an educational institution. The parties generally agree that Title IX liability attached to the school sometime in the spring of 2020 when it received federal funds.[116] As discussed earlier, the parties disagree about the exact date, but I need not resolve that dispute to resolve the motions to dismiss these specific claims. I note only that it is the receipt of funds that trigger compliance with Title IX, not the application

---

[113] Doc. #167-1 at 13–14.
[114] *See* Doc. #185-1 at 5.
[115] *See ibid.* (quoting *Norris v. Norwalk Pub. Schs.*, 124 F. Supp. 2d 791, 794 (D. Conn. 2000)).
[116] *Compare* Doc. #167-1 at 11, *with* Doc. #185-1 at 2–4.

for funds. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 181–82 (2005) ("When Congress enacts legislation under its spending power, that legislation is in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions."); *Soule by Stanescu*, 57 F.4th at 54 (discussing when private damages actions are authorized under Title IX).

Avon Old Farms argues that neither Jane Doe has standing to bring Title IX claims because neither is a student at the school.[117] I do not agree. The Supreme Court has stated that "Title IX … broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex.'" *Jackson*, 544 U.S. at 173. "Congress easily could have substituted 'student' or 'beneficiary' for the word 'person' if it had wished to restrict the scope of [Title IX]." *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982). But it did not do so. Therefore, Title IX is not so limited that it would exclude either of the Jane Doe plaintiffs from its scope simply because neither was a student. *See Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 707–09 (6th Cir. 2022) (holding "that a non-student and non-employee can bring a Title IX claim if they were subject to discrimination 'while participating, or at least attempting to participate, in the funding recipient's education program or activity'"); *Doe v. Brown Univ.*, 896 F.3d 127, 132 n.6 (1st Cir. 2018) (same).

Instead, the relevant question for present purposes is whether the programs or activities that both Jane Does took part in, or sought to take part in, at Avon Old Farms can be characterized as educational. *See O'Connor v. Davis*, 126 F.3d 112, 116–19 (2d Cir. 1997) (analyzing the phrase "education program or activity" in Title IX prior to the statute's

---

[117] *See* Docs. #145 at 153–56 (¶¶ 1053–73) (Count 32, Jane Doe 1 v. Avon Old Farms), 156 (¶¶ 1074–80) (Count 33, Jane Doe 1 v. Avon Old Farms), 157–59 (¶¶ 1081–95) (Count 34, Jane Doe 1 v. Avon Old Farms), 159–61 (¶¶ 1096–111) (Count 35, Jane Doe 2 v. Avon Old Farms), 161–63 (¶¶ 1112–28) (Count 36, Jane Doe 1 v. Avon Old Farms), #167-1 at 11–13.

amendment). Section 1687 of Title IX defines "program or activity" to "mean all of the operations of" the federally funded institution—a very broad definition indeed. 20 U.S.C. § 1687; *see Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 553–54 (3d Cir. 2017) (reviewing Title IX's history and the definition of "program or activity").

Yet, because "education" modifies program or activity, it serves as a check on Title IX's reach. *Id.* at 555–56. As the Third Circuit has explained, "creative minds could conceivably read the word 'education' in Title IX to 'encompass every experience of life,' transforming Title IX into a remedy for any dispute in which someone is 'potentially' learning something." *Ibid.* Such a broad reading, however, would render "education" meaningless and certainly could not have been what Congress intended. *Id.* at 556.

In answering "whether the defendant-entity's questioned program or activity has educational characteristics," it is important to understand a "plaintiff's characteristics—for example, whether she's a student, employee, or something else." *See ibid.* In this case, neither Jane Doe attended Avon Old Farms. Nor is Avon Old Farms—an all-boys institution—under some obligation pursuant to Title IX to offer them admission, as the plaintiffs curiously suggest in their complaint. *See* § 1681(a)(1) (excepting secondary schools' admissions programs from Title IX's prohibition); *Fitzgerald*, 555 U.S. at 257.[118]

And, of course, as a high school, Avon Old Farms may offer quintessential educational programs or activities to certain nonstudents as well as students alike. *See Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 603 (D. Conn. 2021) (explaining the factors that appellate courts apply "to determine the educational nature of the program or activity"). The more precise questions for the two nonstudent Jane Does in this case are what specific "program or activity" at Avon Old Farms

---

[118] *See* Doc. #145 at 9 (¶¶ 48–52).

were they excluded from, denied the benefits of, or subjected to discrimination during, and does that "program or activity" qualify as educational?

The Sixth Circuit has found that "education program or activity" includes "individuals [who] are, for example, accessing university libraries or other resources, or attending campus tours, sporting events, or other activities." *Snyder-Hill*, 48 F.4th at 708 (concluding that Ohio State's summer wrestling camp was an education program or activity). The First Circuit similarly takes a broad view, listing "university libraries, computer labs, and vocational resources" as well as a university's "campus tours, public lectures, [and] sporting events" as qualifying programs and activities. *Brown Univ.*, 896 F.3d at 133 n.6.

As best as I can tell, Jane Doe 1 alleges sex discrimination under Title IX based on Avon Old Farms botching its internal investigation and disciplinary hearing of John Doe, while Jane Doe 2 makes a similar claim based on how the school handled complaints about her ex-boyfriend.[119] All three plaintiffs also allege that Avon Old Farms violated Title IX when it ended the tuition assistance benefit for the daughters of school employees.[120]

First, I conclude that Avon Old Farms' internal process for adjudicating misconduct complaints is not an "education program or activity" under Title IX. A quasi-judicial discipline system is not educational in the way of a public tour, summer camp, sporting event, or campus lecture. Nor does the process have the same characteristics as a university library or a computer lab. The school's internal disciplinary system is meant to enforce school rules and manage student behavior—one does not learn, study, or train.

---

[119] Making this inquiry much more difficult for the Court is the fact that Jane Doe 1's Title IX allegations are a disorganized and confusing mess. *See id.* at 154–55 (¶¶ 1060–68) (Count 32), 156 (¶¶ 1075–78) (Count 33), 157 (¶ 1087) (Count 34), 158 (¶¶ 1089, 1092, 1094) (Count 34), 159–61 (¶¶ 1096–111) (Count 35), 161–63 (¶¶ 1112–28) (Count 36).
[120] *See id.* at 142–43 (¶¶ 1012–22) (Count 27), 157 (¶¶ 1082–87) (Count 34), 159–60 (¶¶ 1098–101) (Count 35).

To be sure, "Title IX … is understood to bar the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 31 (2d Cir. 2019); *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016). The Second Circuit has "divided claims by plaintiffs attacking a university disciplinary proceeding on grounds of gender bias into two categories." *Radwan v. Manuel*, 55 F.4th 101, 130 (2d Cir. 2022). The first category captures innocent plaintiffs who are wrongly found guilty of committing a disciplinary offense, while the second includes claims "that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Ibid.* Neither is this case. And the plaintiffs cite no law for the proposition that a nonstudent victim who is dissatisfied with the school disciplinary hearing in-and-of-itself can then sue the institution under Title IX for what specifically occurred during the hearing.

More generally, Title IX prohibits sexual harassment. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649–50 (1999). In those cases, an institution can be liable for deliberate indifference to acts of student-on-student sexual harassment if the school acts with deliberate indifference and if the harassment is so severe that it effectively bars the victim's access to an educational opportunity or benefit—a so-called *Davis* claim. *See id.* at 650–51; *Medina-Corchado v. Univ. of New Haven*, 2022 WL 279871, at *3 (D. Conn. 2022). Relevant for this case, *Davis* claims can manifest in circumstances where a school's deliberate indifference to a sexual assault or sexual harassment, as evidenced in how the school adjudicated the victim's— even a nonstudent victim's—complaint, can deny that victim access to the school's resources. *See Doe v. Univ. of Kentucky*, 971 F.3d 553, 556–58 (6th Cir. 2020) (concluding that "there is a genuine dispute as to whether [the plaintiff, a nonstudent,] was denied the benefit of an education

program or activity of the University" when the University was allegedly deliberately indifferent to her sexual assault by a student); *Francoeur v. D.L.*, 2017 WL 4247385, at *4 (D. Conn. 2017) (explaining that "[a] school may be found to have acted with deliberate indifference" when its response was "clearly unreasonable" and only followed "after a lengthy and unjustified delay"); *Doe v. Madison Bd. of Educ.*, 2014 WL 6674928, at *5–6 (D. Conn. 2014) (discussing when "a school board may be liable under Title IX for student-on-student harassment").

But *Davis* claims capture plaintiffs who are denied the benefits of an education at the institutions that they attend, wish to attend, or hope to access in some form in the future. To the extent that either Jane Doe complains that the school's deliberate indifference to their respective complaints denied them access to certain resources at Avon Old Farms, those claims are not plausible.[121] They fail because neither Jane Doe logically connects their purported exclusion from these programs or activities to what Avon Old Farms did or did not do.[122] Rather, both Jane Does rely on an attenuated chain of events and causation, puffed up with conclusory allegations, that do not plausibly suggest that the school's actions denied them access to any of the school's resources that were available to them.[123]

As to the Title IX claims based on discrimination with respect to tuition assistance, I assume that tuition assistance qualifies as an "education program or activity" under § 1681(a). *See Grove City Coll. v. Bell*, 465 U.S. 555, 571 & n.21 (1984) (student financial aid program). But neither Jane Doe has standing to challenge Avon Old Farms' change in this benefit. Standing requires an injury-in-fact that is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Most

---

[121] *See, e.g.*, *id.* at 153–56 (¶¶ 1053–73), 158 (¶¶ 1088–89), 160–61 (¶¶ 1102–111).
[122] *See ibid.*
[123] *See ibid.*

teenage high-school students do not fund their own private education. And that is the case here as the complaint makes clear that LuBonta is responsible for tuition.[124]

So, what is Jane Doe 1's injury? She claims only that she "was considering attending an all-girls private high school," and, when the change took place, she was unable to do so.[125] She does not allege that she was attending, or even had been admitted, to a private, independent high school. Without the former or latter, her purported "injury-in-fact" is hypothetical, and she lacks standing to challenge Avon Old Farms ending this employee benefit.

Nor does Jane Doe 2 have standing to challenge this change. Unlike her sister, Jane Doe 2 was attending Ethel Walker when Avon Old Farms removed this benefit.[126] But she "continues to attend" that very school.[127] Her mother paid the difference in tuition.[128] Thus, she does not have a particularized, concrete injury to assert—that clearly belongs to LuBonta.

As for LuBonta, she has standing, and I am unable to conclude at this time that her challenge necessarily fails as a matter of law. Avon Old Farms argues that there is no discrimination against LuBonta because its program treats male and female employees the same with respect to whether their children may qualify for tuition assistance. But, as noted above, Title IX broadly provides that "[n]o *person* ... shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). The term "on the basis of sex" is not restricted solely to the sex of the "person" who has been denied benefits. For example, the statute does not say "on the basis of *the person's* sex."

---

[124] *See id.* at 8 (¶ 42).
[125] *Ibid.* (¶¶ 45–46).
[126] *Ibid.* (¶ 41).
[127] *Ibid.*
[128] *Ibid.* (¶ 42).

The more natural reading of the statutory language is that it prohibits denying benefits to any "person" on the basis of another person's sex, such as the sex of a child of the person who has been denied benefits. This reading is consistent with the evident statutory purpose of Title IX to preclude the consideration of sex-based factors with respect to the ability to take part in and receive benefits from federally funded educational programs.[129]

Accordingly, I will dismiss Jane Doe 1's and 2's Title IX claims (*i.e.*, Counts 32, 33, 34, 35, and 36) but decline to dismiss that portion of LuBonta's Title IX claim based on Avon Old Farms' change in its tuition assistance benefit for the daughters of employees (*i.e.*, Count 27). Avon Old Farms did not move to dismiss several of the plaintiffs' Title IX claims (*i.e.*, Counts 20, 25, the remainder of 27, 29, or 31), and those claims shall proceed.[130] I turn now to consider LuBonta's employment discrimination claims against Avon Old Farms, Detora, and Whitty.

### *Title VII, EPA, and CFEPA*

LuBonta alleges that Avon Old Farms unlawfully discriminated against her in violation of Title VII of the Civil Rights Act of 1964, EPA, and CFEPA, Conn. Gen. Stat. § 46a-60 *et seq.*[131] Avon Old Farms moves to dismiss two of the Title VII claims, one of the CFEPA claims, and a portion of the EPA claim (*i.e.*, Counts 22, 26, 28, and 50).[132]

---

[129] The parties' briefing is not well developed on this issue. If there is pertinent precedent or other grounds for me to reconsider my conclusion that a Title IX sex discrimination claim is not limited to discrimination on the basis of the sex of the person who has been denied participation or a benefit, then Avon Old Farms may file a motion for reconsideration within 30 days of this ruling. Alternatively, if for judicial economy reasons Avon Old Farms elects not to file a motion for reconsideration, I would be prepared to consider the issue anew if raised at the time of the filing of dispositive motions.

[130] Avon Old Farms complains that the plaintiffs cite the incorrect regulations for their Title IX claims throughout their complaint. *See* Doc. #167-1 at 15–17. It appears that they are correct, and I encourage the plaintiffs to reconsider their position on which regulations apply to their claims going forward. But I need not settle this dispute to resolve the pending motions.

[131] Doc. #145 at 135 (¶¶ 963–66) (Count 21, LuBonta v. Avon Old Farms), 136 (¶¶ 967–69) (Count 22, LuBonta v. Avon Old Farms), 139–40 (¶¶ 988–91) (Count 26, LuBonta v. Avon Old Farms), 146 (¶¶ 1007–10) (Count 28, LuBonta v. Avon Old Farms), 151–52 (¶¶ 1038–41) (Count 30, LuBonta v. Avon Old Farms), 187–92 (Count 50, LuBonta v. Avon Old Farms).

[132] *See* Docs. #167 at 1–2, #167-1 at 14–15, 37–39.

Title VII provides that it "shall be an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). The Second Circuit has ruled that "to defeat a motion to dismiss … in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). "[T]he 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' *i.e.*, a discriminatory reason." *Ibid.*

LuBonta alleges that Avon Old Farms acted "with deliberate indifference and did discriminate against [her] in violation of Title VII."[133] But the "deliberate indifference" standard applies to Title IX, not Title VII, claims. *See Radwan*, 55 F.4th at 130–32 (comparing Title IX and Title VII claims).[134] Even apart from that error, the plaintiffs do not allege any discrete facts in this legal count; rather, they incorporate in blunderbuss fashion "all allegations and facts of this action" without specifying which facts support this particular legal count and theory.[135] As a result, they have failed to plead any facts which suggest that Avon Old Farms fired LuBonta because of her sex . *See Yu v. City of New York*, 2021 WL 1063440, at *4 (S.D.N.Y. 2021).[136]

LuBonta also alleges a Title VII violation by way of "disparate treatment" in part based on Avon Old Farms ending its tuition assistance program for the daughters of school

---

[133] Doc. #145 at 139 (¶ 989).
[134] *See* Doc. #167-1 at 38–39.
[135] Doc. #145 at 139 (¶ 988).
[136] The plaintiffs argue that "Count 26 is a viable Count" because Count 25 is incorporated into Count 26. *See* Doc. #185-1 at 10. I disagree. Count 25 is one of LuBonta's Title IX claims that has nothing to do with her termination from Avon Old Farms. *See* Doc. #145 at 137–39 (¶¶ 978–87).

employees.[137] As the plaintiffs concede, and as I have discussed earlier, that change applied to both male and female employees.[138] In contrast to Title IX, the sex-based protections of Title VII depend on the sex of the employee. *See* 42 U.S.C. § 2000e-2(a)(1) (barring discrimination "because of *such individual's* ... sex") (emphasis added); *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1741 (2020) ("Title VII's message is simple but momentous: An individual employee's sex is not relevant to the selection, evaluation, or compensation of employees."). Additionally, with an employee benefit change that applied equally to both male and female employees, LuBonta cannot show either "discriminatory intent or motive" on the part of Avon Old Farms. *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) ("A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action.").

Accordingly, I shall dismiss without prejudice Count 26 and the portion of Count 28 that claims discrimination on the basis of Avon Old Farms' benefit change. Avon Old Farms did not move to dismiss LuBonta's other Title VII claims (*i.e.*, Counts 21 and 30), and they shall proceed.[139]

In Count 50, LuBonta alleges that Avon Old Farms failed to provide equal benefits and equal pay based on her gender in violation of the federal EPA.[140] Under that statute, an employer may not "pay[] wages to [female] employees ... at a rate less than the rate at which [it] pays wages to [male] employees ... for equal work." 29 U.S.C. § 206(d)(1); *see E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254–59 (2d Cir. 2014).

---

[137] *Id.* at 146.
[138] *See* Docs. #145 at 198 (¶¶ 34–35), #167-1 at 14–15, #167-4 at 54–55.
[139] Doc. #145 at 135 (¶¶ 963–66) (Count 21, LuBonta v. Avon Old Farms), 151–52 (¶¶ 1038–41) (Count 30, LuBonta v. Avon Old Farms).
[140] *Id.* at 187–92 (¶¶ 1024–1369). The plaintiffs misnumbered these paragraphs. *See supra* note 72.

Avon Old Farms moves to dismiss the portion of that claim based on the tuition assistance program.[141] As the statute makes clear, an EPA claim turns on the sex of the employee. This means that LuBonta cannot state a cognizable claim with an employee benefit like the tuition assistance program that applies without distinction to both male and female employees. *See id.* at 254 (explaining that in order to prove a *prima facie* case under the EPA the plaintiff must show that "the employer pays different wages to employees of the opposite sex"). Accordingly, I shall dismiss that portion of Count 50 with prejudice, and the remaining portions of that legal count shall proceed.[142]

LuBonta alleges that Avon Old Farms violated several provisions of CFEPA.[143] This state statute broadly prohibits gender-based discriminatory action by employers. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010). Avon Old Farms moves to dismiss the portion of LuBonta's CFEPA claim that alleges an aiding-and-abetting violation of § 46a-60(b)(5).[144] Under that section, it is a "discriminatory practice ... [f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or attempt to do so." § 46a-60(b)(5). But "an employer can not be liable for aiding and abetting its own discriminatory conduct." *Jones v. Sansom*, 2023 WL 1069487, at *17 (D. Conn. 2023); *Jansson v. Stamford Health, Inc.*, 2018 WL 1756595, at *3 (D. Conn. 2018) (same); *Farrar v. Stratford*, 537 F. Supp. 2d 332, 356 (D. Conn. 2008) (same). Because Avon Old Farms was LuBonta's employer, I will dismiss with prejudice the portion of Count 22 that alleges an aiding-and-abetting violation of § 46a-60(b)(5).

---

[141] *See* Docs. #145 at 189–90 (¶¶ 1044–54), #167-1 at 14–15. Although the parties do not address this issue, it appears that this benefit qualifies as "wages" under the EPA. *See* 29 C.F.R. § 1620.10 ("Fringe benefits are deemed to be remuneration for employment.").

[142] Doc. #145 at 187–92 (¶¶ 1024–43, 1055–1369). The plaintiffs misnumbered these paragraphs. *See supra* note 72.

[143] Doc. #145 at 136 (¶¶ 967–69).

[144] Doc. #167-1 at 37–38.

LuBonta also brings CFEPA claims under § 46a-60(b)(5) against both Whitty and Detora.[145] But as to these claims, LuBonta has not complied with the administrative exhaustion requirement.[146] She argues that neither defendant is "an employer and therefore it is not necessary to exhaust administrative remedies with the [Connecticut Commission on Human Rights and Opportunities ("CHRO")]."[147] There is no reason to suppose that the carefully crafted exhaustion requirements for a CFEPA claim should apply only to claims against employers but not to employees. "The courts of this District have consistently applied the exhaustion provisions of the CFEPA to dismiss discrimination claims, finding a lack of subject matter jurisdiction where the plaintiff failed to obtain the requisite release prior to pursuing a private cause of action in court." *Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 272 (D. Conn. 2010); *see Fried v. LVI Servs., Inc.*, 557 F. App'x 61, 63 (2d Cir. 2014) ("It is undisputed that CFEPA claims must initially go through the CHRO, and may not be sued upon until the CHRO grants a release of jurisdiction."); *see also* Conn. Gen. Stat. §§ 46a-100, -101.

In fact, "[w]here a plaintiff has obtained a release for his or her discrimination claims from the CHRO but failed to include a particular defendant in the CHRO complaint, courts of this District have consistently found a lack of subject matter jurisdiction over the [CFEPA] claims as to the unnamed defendant." *Anderson*, 718 F. Supp. 2d at 273. Accordingly, I shall dismiss Counts 23 and 24 without prejudice for lack of jurisdiction.[148]

The dismissal of Count 23 terminates Whitty as a defendant in this lawsuit, leaving only three defendants: John Doe, Avon Old Farms, and Detora. Because Avon Old Farms did not

---

[145] Doc. #145 at 136–37 (¶¶ 970–73) (Count 23, LuBonta v. Robert Whitty), 137 (¶¶ 974–77) (Count 24, LuBonta v. James Detora).
[146] *See* Doc. #201-5 at 7–8.
[147] *Ibid.*
[148] Even if the plaintiffs had exhausted their claims, they fail to allege any specific acts that either Whitty or Detora committed to aid, abet, incite, compel, or coerce a discriminatory employment practice. *See* Docs. #167-1 at 38, #184-1 at 15–17. Therefore, I would also dismiss these claims for failure to state a plausible claim for relief.

move to dismiss several of the federal and state law claims that LuBonta brings under Title IX, Title VII, EPA, and CFEPA, I must now consider whether the Court has supplemental jurisdiction over the plaintiffs' other state law claims.[149]

### *Supplemental jurisdiction*

Under 28 U.S.C. § 1367(a) a federal court has jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "For purposes of section 1367(a), claims 'form part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011); *Briarpatch Ltd., L.P v. Phx. Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (same). And this applies "even if the state law claim is asserted against a party different from the one named in the federal claim." *Briarpatch Ltd., L.P*, 373 F.3d at 308 (citing *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000)); *Li v. Connecticut*, 2022 WL 3347220, at *25 (D. Conn. 2022) (explaining that pendent party jurisdiction is possible "where the [state] claim in question arises out of the same set of facts that give rise to an anchoring federal question claim against another party").

In making this determination, a court should ask whether "the facts underlying the federal and state claims substantially overlap[] … [or] the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006). "Conversely, supplemental jurisdiction is lacking where the federal and state claims rest on essentially unrelated facts." *DeNuzzo v. Yale New Haven Hosp.*, 465 F. Supp. 2d 148, 151–52 (D. Conn. 2006).

---

[149] Avon Old Farms did not move to dismiss Counts 20, 21, 25, 29, 30, or 31. *See* Doc. #167 at 1–2. And it only moved to dismiss certain portions of Counts 22, 27, 28, and 50. *Ibid.*

If a state law claim satisfies § 1367(a), then "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)." *Shahriar*, 659 F.3d at 245 (emphasis in original).[150] It is when an enumerated category applies that a court then considers the values of "economy, convenience, fairness, and comity" in deciding whether to exercise discretion to decline supplemental jurisdiction. *Catzin*, 899 F.3d at 85.

Jane Doe 1 asserts state law claims against John Doe based on his alleged sexual assault of her as well as his purported role in covering up that assault.[151] Because I have dismissed Jane Doe 1's single federal claim against John Doe, only these state law claims remain against him. Importantly, there is no diversity jurisdiction because there is not complete diversity of citizenship between the plaintiffs and the defendants in this case. *See Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014). So, the Court has jurisdiction over these state law claims only if supplemental jurisdiction lies.

The key question then is whether Jane Doe 1's state law claims against John Doe "derive from a common nucleus of operative fact" as her mother's federal claims against Avon Old Farms. They do not. LuBonta's claims specifically relate to LuBonta's employment at the school and allege, among other things, harassment, retaliation, disparate treatment, and a hostile work environment while she worked there.[152] They are factually and legally distinct from Jane Doe 1's allegations against John Doe, which are based on his alleged assault of her at the local Walmart.

---

[150] Section 1367(c) permits district courts to decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." § 1367(c).

[151] Doc. #145 at 81–84 (¶¶ 590–621) (Count 1, Sexual Assault – Assault and Battery, Jane Doe 1 v. John Doe), 86–87 (¶¶ 634–44) (Count 3, IIED, Jane Doe 1 v. John Doe), 87–88 (¶¶ 645–54) (Count 4, NIED, Jane Doe 1 v. John Doe).

[152] *Id.* at 131–35 (¶¶ 935–62) (hostile work environment in violation of Title IX), 135 (¶¶ 963–66) (hostile work

Although LuBonta's claims refer to Jane Doe 1's alleged sex assault, the thrust of LuBonta's employment claims do not depend on the underlying claim that Jane Doe 1 was sexually assaulted. Rather, LuBonta's claims are predicated on her employment relationship with Avon Old Farms.[153] As a minor student who attends that school, John Doe is not involved with the school's administration or its employment decisions. To the extent that LuBonta bases any part of her hostile work environment, disparate treatment, or retaliation claims on how the school addressed Jane Doe 1's allegations against John Doe, those claims do not depend on whether her daughter was, in fact, assaulted. *See Jafri v. Town of New Canaan*, 2022 WL 344230, at *3 (D. Conn. 2022) (concluding that the court did not have supplemental jurisdiction over two sets of claims, the first of which involved a parking ticket, and the second of which involved media-affiliated defendants reporting on the ticket).

Therefore, Jane Doe 1's state law tort claims against John Doe are wholly separate from LuBonta's federal employment claims against Avon Old Farms. Accordingly, I will dismiss Jane Doe 1's state law claims against John Doe (*i.e.*, Counts 1, 3, and 4) without prejudice to their re-filing in state court.

Even if I were to conclude that there is federal jurisdiction over Jane Doe 1's state law claims against John Doe, I would grant John Doe's motion to dismiss these counts for substantially the reasons stated by him in his motion to dismiss.[154] And even if I were to

---

environment in violation of Title VII), 137–39 (¶¶ 978–87) (deliberate indifference in violation of Title IX), 140–45 (¶¶ 992–1006) (disparate treatment in violation of Title IX), 146 (¶¶ 1007–10) (disparate treatment in violation of Title VII), 146–51 (¶¶ 1011–37) (retaliation in violation of Title IX), 151–52 (¶¶ 1038–41) (retaliation in violation of Title VII), 152–53 (¶¶ 1042–52) (failure to follow Title IX procedures).

[153] *See, e.g.*, *id.* at 131 (hostile work environment), 135 (hostile work environment), 137 (deliberate indifference), 146 (retaliation), 151 (retaliation), 152 (failure to follow Title IX procedures). Jane Doe 1 asserts a claim under state law that Avon Old Farms negligently supervised John Doe. *See id.* at 168–69 (¶¶ 1168–80) (Count 38, Jane Doe 1 v. Avon Old Farms). The school did not move to dismiss that claim, and, therefore, it shall proceed. But that surviving state law claim is not relevant to my analysis of whether supplemental jurisdiction lies over the plaintiffs' other state law claims.

[154] *See* Doc. #238-1 at 11–20.

conclude that Jane Doe 1 had stated plausible state law claims against John Doe, I would conclude that this is an exceptional circumstance with "compelling reasons for declining jurisdiction." *See* § 1367(c)(4). Considering the values of "economy, convenience, fairness, and comity," I would decline jurisdiction because a federal court is not the proper forum to adjudicate a sexual assault allegation between two minors. A Connecticut state court is in a far better position to handle such cases as its court system regularly handles juvenile-related matters.

All three plaintiffs bring IIED and NIED claims against Detora and Avon Old Farms.[155] These claims overlap in certain respects with LuBonta's surviving federal claims against Avon Old Farms. As discussed above, LuBonta's federal claims allege that there were underlying deficiencies in how her daughters' complaints of sexual harassment and assault were handled, which resulted in retaliation and discrimination against all three plaintiffs. Therefore, viewing the facts in the light most favorable to the plaintiffs at this stage, I assume that there is supplemental jurisdiction over these claims and now turn to evaluate whether the plaintiffs have alleged plausible IIED and NIED claims.

### IIED and NIED claims

Under Connecticut's common law, a plaintiff claiming IIED must show: "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *See Gleason v. Smolinski*, 319

---

[155] Doc. #145 at 171–72 (¶¶ 1194–205) (Count 40, Jane Doe 1 v. James Detora), 173–74 (¶¶ 1219–30) (Count 42, Jane Doe 1 v. James Detora), 176–77 (¶¶ 1257–69) (Count 44, LuBonta v. James Detora), 179–80 (¶¶ 1289–1301) (Count 46, LuBonta v. James Detora); *id.* at 170–71 (¶¶ 1181–93) (Count 39, Jane Doe 1 v. Avon Old Farms), 172–73 (¶¶ 1206–18) (Count 41, Jane Doe 1 v. Avon Old Farms), 180–81 (¶¶ 1302–14) (Count 47, Jane Doe 2 v. Avon Old Farms), 181–82 (¶¶ 1315–28) (Count 48, Jane Doe 2 v. Avon Old Farms); *id.* at 174–76 (¶¶ 1231–56) (Count 43, LuBonta v. Avon Old Farms), 177–79 (¶¶ 1270–88) (Count 45, LuBonta v. Avon Old Farms).

Conn. 394, 406 n.14 (2015). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine" unless reasonable minds can differ in which case it is for a jury to decide. *Ibid.*

Connecticut law sets a very high bar for what constitutes extreme and outrageous conduct. The conduct must exceed all bounds usually tolerated by decent society. *Ibid.* It must be such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Ibid.* Conduct that is merely insulting, bad-mannered, or hurtful to a plaintiff's feelings is not enough to sustain a claim for intentional infliction of emotional distress. *Ibid.*

The plaintiffs' claims do not meet this high bar. Their IIED claims against Avon Old Farms and Detora are premised on several jumbled and convoluted factual scenarios.[156] The plaintiffs try to shoehorn all the defendants' actions into these claims, most significantly the purported conspiracy. LuBonta even includes her employment discrimination claims. *See Grasso v. Conn. Hospice, Inc.*, 138 Conn. App. 759, 775 (2012) ("A vindictive conspiracy to terminate a plaintiff's employment, even if true, would not necessarily be sufficient to state a claim for [IIED]."). Even viewing this mishmash of facts in the light most favorable to the plaintiffs, they are insufficient to support their claims. If one recited them to an average member of the community, these conclusory allegations would almost certainly generate puzzled looks, complete disbelief, and a litany of follow-up questions.

For kitchen sink purposes, the plaintiffs toss in Avon Old Farms' termination of its tuition assistance program for the daughters of employees as part of their emotional distress

---

[156] *See id.* at 170–71 (¶¶ 1181–93) (Count 39, Jane Doe 1 v. Avon Old Farms), 171–72 (¶¶ 1194–205) (Count 40, Jane Doe 1 v. James Detora), 174–76 (¶¶ 1231–56) (Count 43, LuBonta v. Avon Old Farms), 176–77 (¶¶ 1257–69) (Count 44, LuBonta v. James Detora), 180–81 (¶¶ 1302–14) (Count 47, Jane Doe 2 v. Avon Old Farms).

claims.[157] If one asked an average member of the community what he or she thought about a wealthy boarding school ending a program that pays for the employees of said school to send their daughters to another wealthy boarding school, I hesitate to guess the response, but I feel sure it would not be "Outrageous!"

To establish a claim for negligent infliction of emotional distress, a plaintiff must show that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Lundstedt v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 3101999, at *3 (D. Conn. 2016); *Packer v. SN Servicing Corp.*, 2008 WL 359411, at *12 (D. Conn. 2008); *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).

In the employment context, NIED claims must be "based upon [the] unreasonable conduct of the defendant in the termination process." *Parsons v. United Techs. Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 88 (1997); *see Giordano v. Gerber Sci. Prod., Inc.*, 24 F. App'x 79, 81 (2d Cir. 2001) (same). LuBonta does not point to any conduct that was wrongful on behalf of Avon Old Farms or Detora in the termination process itself; rather, she claims that "[t]he manner in which [Avon Old Farms] terminated LuBonta's employment was done through multiple acts leading up to the termination and was performed with intentional malice, wrecklessness [sic] and consisted of extreme and outrageous conduct."[158] This is quintessentially conclusory and falls well short of stating a plausible NIED claim.

---

[157] *Id.* at 181 (¶¶ 1308–10).
[158] *See id.* at 177–79 (¶¶ 1270–88), 179–80 (¶¶ 1289–1301).

The remaining NIED claims pertain to the defendants' purported conspiracy.[159] Those claims fare no better for the reasons discussed throughout this ruling; the plaintiffs have failed to plead a plausible conspiracy or identify what in particular was deficient in how Avon Old Farms handled their respective complaints about students at the school. NIED cases require that the "fear or distress experienced by the plaintiffs [must] be reasonable in light of the conduct of defendants." *Carrol*, 262 Conn. at 447. As discussed, even viewing the facts in the complaint in the light most favorable to the plaintiffs, the defendants took prudent measures following the plaintiffs' complaints of harassment and assault by Avon Old Farms' students—it is the plaintiffs' reactions to the defendants' conduct that is not reasonable.

Accordingly, I will dismiss the plaintiffs' IIED and NIED claims against Avon Old Farms and Detora (*i.e.*, Counts 39, 40, 41, 42, 43, 44, 45, 46, 47, and 48) without prejudice, which terminates Detora as a defendant in this action. This leaves Avon Old Farms as the sole remaining defendant in this lawsuit. I will now consider the plaintiffs' motion to file a sixth amended complaint as well as Whitty's motion for sanctions.

### Sixth amended complaint

The plaintiffs have moved to file a sixth amended complaint pursuant to Rule 15.[160] They request to add spoliation, negligent supervision, vicarious liability, conspiracy, and Connecticut Unfair Trade Practices Act ("CUTPA") claims.[161] The defendants oppose.[162] When granting the

---

[159] *See id.* at 172–74 (¶¶ 1206–30), 181–82 (¶¶ 1315–28). It is not clear that Avon Old Farms or Detora owed a duty of care to either Jane Doe, neither of whom attend Avon Old Farms. *See Marsala v. Yale-New Haven Hosp., Inc.*, 166 Conn. App. 432, 445 (2016) ("[N]egligent infliction of emotional distress claims require proof of the breach of a legally recognized duty, causing injury."). The plaintiffs have plead no facts that suggest either defendant owed them a duty of care. *Cf. Vega v. Sacred Heart Univ., Inc.*, 836 F. Supp. 2d 58, 61–62 (D. Conn. 2011) (concluding that the student-plaintiff had "alleged facts sufficient to give rise to a plausible claim that [a university] owed [the plaintiff] a duty of care").

[160] Doc. #262.

[161] Doc. #262-1 at 3–4, 11–16.

[162] *See* Docs. #266, #267, #268, #269, #272.

plaintiffs' previous motion to amend, I issued a stark warning and explained that I would be "unlikely to entertain further amendments to the complaint absent a very clear showing of good cause why such amendment could not have been proposed at an earlier time."[163] The plaintiffs have made no such showing.

Under Rule 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a "permissive standard," but denial of leave to amend may be appropriate in circumstances involving "undue delay, bad faith, dilatory motive, and futility." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

In this case, the plaintiffs fail to offer any meaningful reasons for the delay in bringing forth these additional allegations.[164] They argue that family emergencies precluded them from communicating with their counsel during the summer of 2022.[165] But the plaintiffs filed this case in May of 2021.[166] This explanation is lame considering the amount of time that elapsed between May 2021 and the filing of their fifth amended complaint in April 2022.[167]

Nor am I convinced that "[t]here are many new facts and circumstances" that support amending the complaint for the sixth time.[168] The plaintiffs fail to logically connect any of their new state law claims with these purported "new facts and circumstances."[169] In fact, the legal counts in the plaintiffs' proposed complaint do not appear to contain any information that was

---

[163] Doc. #117.
[164] *See* Doc. #262-1 at 2–3.
[165] *See ibid.*
[166] Doc. #1.
[167] Docs. #1, #145.
[168] Doc. #262-1 at 3.
[169] *See* Doc. #262-14 at 83–93 (¶¶ 590–659), 200–20 (¶¶ 1401–1535) (the plaintiffs' red-lined version of the sixth amended complaint).

not known to them well before April 2022.[170] Look no further than the proposed complaint itself, which contains no substantive changes to the facts section.[171]

The plaintiffs blame the defendants for this untimely motion to amend.[172] They point to discovery disagreements between the parties as the reason they are so late in bringing forth these new claims.[173] I am not convinced. These disagreements are thinly veiled pretexts that the plaintiffs rely on as their cure all for their repeated failure to follow the federal rules and to engage in scattershot pleading of their facts and claims.[174] I find that these disputes—in many instances manufactured by the plaintiffs themselves—are neither legitimate nor appropriate reasons to grant a motion to amend.[175]

And even if I were to find the plaintiffs' explanations in bringing forth these new claims legitimate and in good faith (I do not), they are futile. "Leave to amend may properly be denied if the amendment would be futile." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim." *In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021). When deciding "whether granting leave to amend would be futile," I consider both "the proposed amendments and the original complaint." *Ibid.*

Here, despite several prior amendments at this point, the plaintiffs' proposed complaint contains federal and state law claims with substantive defects that the amendments do not cure.[176] Most of these claims I have now dismissed. That is reason enough to deny the plaintiffs'

---

[170] *See ibid.*
[171] *See id.* at 6–83 (statement of facts).
[172] *See* Doc. #262-1 at 2.
[173] *See ibid.*
[174] *See generally id.* at 2 (claiming that Avon Old Farms produced "false documents"), 4–5 (claiming that Avon Old Farms manufactured "false evidence during discovery").
[175] *See* Docs. #266 at 2, #267 at 4–5, #268 at 4; *see also* Docs. #224 at 4, #244-1 at 3–4 (noting instances where magistrate judges reprimanded Attorney Mahoney).
[176] *See* Doc. #262-14 at 83–200 (asserting the same deficient legal claims).

motion because they continue to offer nothing to fix the fatal defects throughout their bloated complaint. *See Black v. Ganieva*, 2023 WL 2317173, at *3 (2d Cir. 2023) ("[T]here is no requirement in our case law that courts explicitly reconsider proposed amendments that they have already denied in dismissing an operative complaint with prejudice."); *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 127 (2d Cir. 2007); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Yet, even if I were to consider the state law claims that the plaintiffs propose, a close review of them reveals conclusory allegations that fail to suggest unlawful conduct on the part of the defendants.[177] The plaintiffs propose 28 new legal counts for spoliation, negligent supervision, vicarious liability, conspiracy, and violations of CUTPA.[178] These claims suffer from the exact same deficiencies I have identified throughout this ruling.[179] Even more so. For the reasons I discussed at length with counsel during oral argument, these factual allegations suggest nothing untoward. Rather, the plaintiffs chronicle innocent facts and then throw in a nefarious legal conclusion. That is insufficient to state a plausible claim for relief. Here, the claims "lack[] an arguable basis either in law or in fact," and they contain "inarguable legal conclusion[s]" and "fanciful factual allegations." *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989). They lack merit and fail to state plausible claims for relief.

I am concerned that the plaintiffs are trying to make responding to their ever-evolving claims near impossible for the defendants while simultaneously imposing substantial and unnecessary litigation costs on them. Not anymore. I will deny the plaintiffs' motion to file their proposed sixth amended complaint.

---

[177] *See* Docs. #266 at 3–4, #268 at 8–13; *see also* Doc. #262-14 at 200–20 (¶¶ 1401–1535) (Counts 55–82 contain the plaintiffs' new proposed legal claims).
[178] Doc. #262-14 at 200–20.
[179] *See id.* at 200–01 (¶¶ 1401–08), 204–06 (¶¶ 1426–40).

### *Rule 11 sanctions*

Whitty moves for Rule 11 sanctions.[180] He seeks to hold plaintiffs' counsel—Attorney Sol Mahoney—responsible for calling him a racist in the plaintiffs' opposition brief to his motion to dismiss.[181] Specifically, under a subheading entitled "Important facts," Attorney Mahoney alleged that "Whitty was reprimanded when he was on the Avon Police force for being involved about [sic] a racist e-mail regarding President Obama."[182] Whitty seeks legal fees, a penalty, censure, and a corrected filing of the defamatory brief as sanctions for Attorney Mahoney's conduct.[183]

With respect to the allegation, Whitty explained that over fourteen years ago while he was serving as an Avon police officer he had been reprimanded for forwarding an email on his work account that was unrelated to official police matters.[184] An internal investigation concluded that he had violated the Town of Avon's email policy, but it also determined that the email itself—the one which Attorney Mahoney references in his brief—was "informational and political in nature[,] and not opinionated or racist."[185]

In his motion for sanctions, Whitty emphatically points out that the plaintiffs' reference to this email "is clearly immaterial to any matter raised in the motion or the litigation, and cannot be interpreted as anything other than a misuse of the court process in an attempt to publicly

---

[180] Doc. #244.

[181] *Id.* at 1.

[182] Doc. #205-1 at 2 (¶ 3).

[183] Doc. #244-1 at 14 ("(1) legal fees incurred in briefing and arguing this motion; (2) a substantial penalty to the Court to deter future violations; (3) a directive to cease filing new frivolous claims and asserting baseless and disparaging facts or arguments in court filings; and (4) an order that Plaintiffs withdraw ECF 201-5 and file a corrected version that omits the inappropriate and false statement.").

[184] *See* Doc. #224 at 2–5.

[185] *Id.* at 2–3.

shame and harm Whitty by attacking his character."[186] He argues that this character assassination was objectively unreasonable, irrelevant, and made for an improper purpose.[187] I agree.

Attorney Mahoney responds to Whitty's Rule 11 motion in a brief peppered with non-sequiturs and more *ad hominem* attacks.[188] He cites not a single case, nor law, nor rule, in his opposition brief.[189] Rather, he makes spurious claims against Avon Old Farms and their counsel, and argues—unironically I might add—that Whitty's motion for sanctions is meant to distract this Court from the merits of this litigation.[190] The brief reads like a personal tirade one might find on the internet, not in any proper pleading that a competent and diligent attorney would file in any federal court.[191]

At oral argument, I questioned Attorney Mahoney about why he included this so-called "fact" about Whitty in his clients' brief.[192] What was Attorney Mahoney's proper purpose for including that statement?[193] He could not offer a single reason, and he claimed that he needed more time to review his files and think about it further.[194] So, I obliged and entered a docket order requiring him to file a statement to explain his proper purpose.[195]

Soon thereafter, he reversed course. He filed a redacted opposition to Whitty's motion to dismiss and moved to seal the prior brief.[196] In his motion, Attorney Mahoney tersely noted that

---

[186] Doc. #244-1 at 6.
[187] *Id.* at 8–12.
[188] Doc. #253.
[189] *Ibid.*
[190] *See id.* at 2.
[191] *See ibid.* ("I am not a teenage girl nor am I an employee of Avon Old Farms School who relies on the school for their income.").
[192] Doc. #287 at 122 (Transcript of Oral Argument).
[193] *Id.* at 124–26.
[194] *Id.* at 126.
[195] Doc. #282.
[196] Docs. #284, #285.

the brief "contained allegations that were not appropriate in a response to a Motion to Dismiss."[197] But this *mea culpa* only moots a portion of the relief that Whitty seeks.

And I would add that it only came after prompting from the Court. Whitty had provided notice of his motion for sanctions in accordance with Rule 11. *See* Fed. R. Civ. P. 11(c)(2).[198] This means, of course, that Attorney Mahoney had a full opportunity to reconsider and make the necessary correction before the Court had to intervene. *See Thompson v. Steinberg*, 2023 WL 353359, at *3 (2d Cir. 2023) (discussing Rule 11's safe harbor provision). He did not do so within 21 days and, therefore, he does not benefit from Rule 11's safe harbor provision.

Rule 11 provides, in relevant part, that "[b]y presenting to the court a pleading, written motion, or other paper ... an attorney … certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that] it is not being presented for any improper purpose [and] the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). After giving due notice and an opportunity to respond, a court may impose an "appropriate sanction" on a party that violates Rule 11's pleading requirements. Fed. R. Civ. P. 11(c)(1).

"A pleading, motion or other paper violates Rule 11 … when it has been interposed for any improper purpose." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002). Proof of a violation of Rule 11 requires "a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) (emphasis omitted)). Even after finding a violation of Rule 11, I have discretion whether to impose sanctions. *See Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012).

---

[197] Doc. #284 at 1.
[198] *See* Doc. #244-2 at 3 (¶¶ 11–13) (Affidavit of Sarah A. Westby).

The evidence before me demonstrates beyond any doubt that Attorney Mahoney knowingly included a statement in his clients' brief that was both factually irrelevant to the merits of Whitty's motion to dismiss and made for the improper purpose of harassing and defaming Whitty. This decades-old investigation that Attorney Mahoney referenced has no salience to the current litigation and pertained to Whitty's former job as an Avon police officer. It has nothing to do with Whitty's current position at Avon Old Farms.

And Attorney Mahoney certainly knew that. That's why he corrected the pleading following my inquiry at oral argument. And that's why he acknowledged that it was not appropriate to include it in the first place. In fact, even in Attorney Mahoney's opposition to sanctions, he did not attempt to justify his behavior or explain the relevance of the email or why he included the comment about Whitty. He responded that "[t]ruth is a defense."[199] But Attorney Mahoney's characterization of the email Whitty forwarded is beside the point. The inflammatory allegation had no relevance to the motion to dismiss, and Attorney Mahoney included it for the gratuitous purpose of insulting and embarrassing Whitty. Accordingly, I find that Attorney Mahoney acted objectively unreasonable when he included this allegation in his clients' pleading.

Having concluded that Attorney Mahoney's behavior was objectively unreasonable, I must next consider whether sanctions are appropriate, and, if they are appropriate, what form they should take. Rule 11 allows for a range of sanctions "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *See* Fed. R. Civ. P. 11(c)(4). As the Advisory Committee's Note makes clear, "[t]he court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle

---

[199] Doc. #253 at 1.

that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." Fed. R. Civ. P. 11 advisory committee's note to the 1993 amendment.

First, I conclude that Attorney Mahoney should pay the legal fees that Whitty incurred in serving as well as briefing and arguing the motion for Rule 11 sanctions. Because Whitty did not include the total amount of costs and fees that he incurred, he shall provide the Court with an accounting of such. After review and after allowing Attorney Mahoney seven days to file any objection to the proposed costs and fees, the Court will determine the total dollar amount for which Attorney Mahoney shall be responsible and the due date for payment.

Second, Attorney Mahoney shall pay an additional penalty to the Court. Rule 11 allows for the award of a monetary penalty as appropriate to deter misconduct. Deterrence is an important concern here because Attorney Mahoney has continued to make spurious and false allegations against the defendants and their legal counsel.[200] I find that both general and specific deterrence warrant that Attorney Mahoney pay a monetary penalty. I recognize, however, that he is a solo practitioner and therefore conclude for deterrence reasons that a monetary penalty of $1,000 is appropriate.

CONCLUSION

For the reasons set forth above, the Court enters the following orders:

(1) The Court GRANTS the motion to dismiss of defendants Avon Old Farms and Detora (Doc. #167). The Court dismisses with prejudice Counts 6, 14, and 37. The Court dismisses without prejudice Counts 26, 32, 33, 34, 35, 36, 39, 40, 41, 42, 43, 44, 45, 46, 47, and 48. The Court dismisses portions of Counts 22 (with prejudice), 28 (without prejudice), and 50 (with

---

[200] *See* Docs. #244-1 at 2–5, #244-3 at 2–13.

prejudice) in accordance with the terms set forth above in this ruling.

(2) The Court GRANTS the motion to dismiss of defendants Detora and Whitty (Doc. #184). The Court dismisses with prejudice Counts 5 and 13 and dismisses without prejudice Counts 23 and 24.

(3) The Court GRANTS the motion to dismiss of defendant John Doe (Doc. #238). The Court dismisses with prejudice Counts 2 and 12 and dismisses without prejudice to re-filing in state court Counts 1, 3, and 4.

(4) The Court GRANTS defendant G.G.'s motion to dismiss (Doc. #255). The Court dismisses with prejudice Counts 7 and 15. The Court DENIES as moot G.G.'s prior motion to dismiss (Doc. #178).

(5) The Court GRANTS Walmart's motion to dismiss (Doc. #206). The Court dismisses with prejudice Counts 9 and 17.

(6) The Court DISMISSES pursuant to 28 U.S.C. § 1915(e)(2)(B) all claims against defendants Town of Avon, Chief Rio, Lieutenant Williams, and Sergeant Gilbert. The Court dismisses with prejudice Counts 8, 10, 11, 16, 18, 19, 51, and 52. The Court dismisses without prejudice Count 49 against the Town of Avon.

(7) The Court DENIES as moot the parties' motions to strike (Docs. #156, #183, #198, #199, #200) in light of its ruling on the substance of the motions to dismiss.

(8) The Court DENIES the plaintiffs' motion to file their proposed sixth amended complaint (Doc. #262). This denial, however, does not limit the right of the plaintiffs to file a sixth amended complaint with respect to those claims that have been dismissed without prejudice and as explained in more detail below.

(9) To the extent that the Court has dismissed any claims without prejudice, the Court

will allow the plaintiffs at their option to file an amended complaint with respect to such claims on or before **May 1, 2023**, if there are additional facts that the plaintiffs can plead in good faith and that overcome the reasons stated in this ruling for the dismissal of such claims. Any such amended complaint must be limited to (1) those claims that have not been challenged by the defendants as set forth in this ruling, and (2) to those claims dismissed without prejudice in this ruling and for which the plaintiffs believe in good faith that there are additional non-conclusory facts that establish plausible grounds for relief. Any such amended complaint must fully comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. The Court's allowance of the filing of an amended complaint does not permit the plaintiffs to add new claims absent the filing of a separate motion that establishes good cause to do so.

(10) If the plaintiffs choose not to file an amended complaint by May 1, 2023, then this action shall proceed on the basis of those claims alleged in the fifth amended complaint that have not been dismissed in this ruling. The Court understands those remaining claims to be solely against Avon Old Farms and to include Counts 20, 21, 25, 27, 29, 30, 31, and 38, as well as the portions of Counts 22, 28, and 50 that the Court did not dismiss.

(11) The Court GRANTS defendant Whitty's motion for Rule 11 sanctions (Doc. #244). Attorney Mahoney shall pay a $1,000 penalty to the Clerk of Court on or before **May 1, 2023**. In addition, Whitty may file by **April 17, 2023**, an itemized accounting of the attorney's fees and costs that he seeks from Attorney Mahoney, and Attorney Mahoney may file any objection to the accounting by **April 24, 2023**.

(12) The parties shall contact the chambers of U.S. Magistrate Judge S. Dave Vatti for the purpose of convening a scheduling conference and entry of a revised scheduling order by Judge Vatti. The stay of discovery shall remain in full force and effect until such time that Judge Vatti

may enter an order lifting the stay of discovery.

It is so ordered.

Dated at New Haven this 31st day of March 2023.

/s/ *Jeffrey Alker Meyer*

Jeffrey Alker Meyer
United States District Judge